IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| AIMIE R. MOKWA-GOODRICH, | ) |
| Plaintiff, | ) |
| v. | ) Case No.:   4:19-cv-2488 |
| ST. LOUIS COUNTY, | ) **JURY TRIAL DEMANDED** |
| Defendant. | ) |

## COMPLAINT

COMES NOW, Plaintiff, Aimee Mokwa-Goodrich ("Plaintiff"), by and through her undersigned attorneys, and for her Complaint against St. Louis County ("Defendant"), states as follows:

## PARTIES

1. Plaintiff is a resident of Madison County, Illinois. Plaintiff was in the custody of Defendant from November 27, 2017 through February 23, 2018, as a result of a criminal sentence ordering participation in the CHOICES program at the St. Louis County Jail, Buzz Westfall Justice Center, 100 South Central Avenue, Clayton, Missouri 63105. During this period, Plaintiff was subjected to various unconstitutional conditions, violations of the ADA, violations of the RA, and negligence, as described herein.

2. Defendant is a political and geographic subdivision of the State of Missouri and organized under state law. At all times relevant herein, St. Louis County acted through its officials, agents, servants and employees.

3. Defendant oversees the operations of the St. Louis County Jail at The Buzz Westfall Justice Center (the "Jail") through its Department of Justice Services. Defendant provides medical services at the Jail through its Corrections Medicine Program and Department of Public Health.

1

## JURISDICTION AND VENUE

4. This Complaint asserts civil rights claims of violation of the Eight and Fourteenth Amendments to the United States Constitution arising under 42 U.S.C. §1983; violation of Title II of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12131-12165; and violation of § 504 of the Rehabilitation Act of 1973 ("RA"), 29 U.S.C. § 794(a).  This Court has jurisdiction of these claims pursuant to 28 U.S.C. §§ 1331 and 1343.

5. This Complaint further asserts a claim of negligence under the law of the State of Missouri.  The Court has jurisdiction of this claim pursuant to 28 U.S.C. § 1367(a).

6. Venue in this Court is proper pursuant to 28 U.S.C. § 1391 because Defendant is located in this District and the events giving rise to Plaintiffs' claims occurred in this District.

## FACTS

7. From February 2017 to the present, Plaintiff has suffered from degenerative joint disease and arthritis caused by osteomyelitis, primarily of the left hip and left knee, which substantially limits her ability to walk, stand and care for herself.

8. At the time Plaintiff was in the custody of the Jail from November 27, 2017 to February 23, 2018, Plaintiff was suffering from degenerative joint disease and arthritis of the left hip and left knee, which substantially limited her ability to stand and care for herself and necessitated the use of an assistive device in order for her to walk.

9. As a result of her disabilities and necessary use of a walker, Plaintiff was assigned to use of the Jail's handicap shower (the "Shower") during the period of her confinement.

10. During the period of Plaintiff's confinement, the Shower did not have a mat on the floor of the Shower and the handicap seating in the Shower was broken.

11. During the period of Plaintiff's confinement, the Shower was not compliant with the accessibility standards applicable to correctional facilities pursuant to the Standards for

Accessible Design ("ADA Standards) or the Uniform Federal Accessibility Standards ("UFAS"), 41 C.F.R. § 101-19.6, App. A.

12. Between November 27, 2017 and January 19, 2018, Plaintiff made several requests that the Jail repair the broken handicap seating and place a mat on the floor of the Shower in order to accommodate her disability impairing her ability to stand and care for herself, and to remedy the slippery and dangerous conditions created by the broken handicap seating and slick floor.

13. The Jail did not comply with any of Plaintiff's requests as described in Paragraph 12, above.

14. On or about January 20, 2018, at approximately 9:00 a.m., the slippery, dangerous and non-ADA compliant conditions in the Shower caused Plaintiff to slip and fall in the Shower (the "Accident").

15. Immediately following the Accident, Plaintiff was examined by Defendant's medical staff. Plaintiff's left leg was swollen and Plaintiff requested transportation to the hospital. Plaintiff was advised that the Jail's protocol would not allow transfer at that time. Plaintiff was then transported to her cell at the Jail. Approximately one hour later, Defendant's medical staff arrived at Plaintiff's cell with a rubber glove containing a paltry amount of melted ice cubes to apply to Plaintiff's swollen leg. Plaintiff again requested transportation to the hospital, which was again denied.

16. Plaintiff did not receive any additional medical evaluation until eight hours after the Accident, at approximately 5:05 p.m., at which time x-rays of Plaintiff's left lower extremity were taken in the Jail's infirmary. The Jail's ability to obtain the x-ray results was limited to obtaining the results through the Jail facsimile machine, which was not functioning on the date of the Accident. Around 1:30 a.m. the following morning, January 21, Plaintiff was advised that the x-ray results were still not available. Plaintiff advised Defendant's staff that she was in extreme

3

pain, that she believed her ankle was broken, and that she needed to be taken to the hospital. At approximately 4:00 a.m., Lieutenant Sutherland observed Plaintiff's condition and returned with medical staff due to Plaintiff's pain level and ankle swelling. Plaintiff was provided with another glove of ice and ibuprofen. Plaintiff again requested transportation to the hospital, which was denied.

17. The x-ray results were not received by the Jail until January 21, 2018, the day following the accident. The x-ray results demonstrated that Plaintiff suffered multiple fractures to her left lower extremity.

18. Around 9:00 a.m. on January 21, 2018, the Jail finally authorized Plaintiff's transportation to St. Mary's Hospital for evaluation of her injuries sustained in the Accident. By that time, Defendants had failed to provide Plaintiff with adequate medical treatment for a period of time in excess of 24 hours.

19. At St. Mary's Hospital, Plaintiff was diagnosed with multiple fractures to her left lower extremity. Her left lower extremity was casted from the base of her toes to the base of her knee.

20. The discharge instruction provided by St. Mary's Hospital stated that Plaintiff was to follow-up with Dr. Kenneth Zehnder at Mid County Orthopaedics within one (1) day, and that Plaintiff was to return to St. Mary's Hospital immediately if any issues with her cast arose.

21. Following the Accident, Plaintiff requested evaluation for swelling, pain and discoloration of her toes on January 31, 2018 and February 8, 2018. Plaintiff was advised by Defendant's medical staff on both occasions that her cast was too tight, but that the Jail did not have adequate supplies or qualified staff to repair or replace the cast. Defendant's medical staff advised Plaintiff that pursuant to Defendant's policies, she could not be transported out of the Jail

for appropriate treatment and that she would be required to obtain adequate treatment on her own following her release, which was scheduled for February 23, 2018.

22. Defendant failed to comply with the instructions of St. Mary's Hospital regarding follow-up care and cast issues.

23. As a result of Defendant's violations of the ADA and RA, denying her equal access to and the benefit of the Jail showers, Plaintiff suffered multiple fractures to her left lower extremity.

24. As a result of Defendant's failure to provide adequate medical care, in violation of the Fourteenth and Eighth Amendments to the United States Constitution, Plaintiff suffered excruciating pain, exacerbation of her lower extremity fractures, and exacerbation of her disabilities.

### COUNT I – VIOLATION OF TITLE II OF THE AMERICANS WITH DISABILITIES ACT OF 1990

COMES NOW, Plaintiff, Aimie Mokwa-Goodrich, by and through her undersigned counsel, and for Count I of her Complaint against Defendant St. Louis County for violation of Title II of the Americans With Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12131-12165, states as follows:

25. Plaintiff restates the allegations set forth in Paragraphs 1 – 24 as if fully set forth herein.

26. The ADA applies to Defendant because it is a "public entity" as defined by Title II of the ADA.

27. The Jail was constructed and/or altered after January 26, 1992, and thus, pursuant to Title II of the ADA, should have been altered in such a manner that the facility is readily accessible to and usable by individuals with disabilities. The construction and/or alterations

between January 26, 1992 and were required to comply with either the 1991 Standards for Accessible Design ("ADA Standards") or the Uniform Federal Accessibility Standards ("UFAS"), Any alterations following March 15, 2012 were required to comply with the 2010 Standards for Accessible Design.

28. Defendant failed to construct and/or alter the Jail as required by Sections 4.21, 4.23, and 4.26 of the UFAS and ADA Standards. As a result, the Jail was not readily accessible to and usable by Plaintiff, in that the Shower was not readily accessible and usable by Plaintiff.

29. Defendant failed to maintain appropriate policies to protect prisoners with Plaintiff's disability or other similar disabilities from injury or the risk of injury by failing to provide ADA compliant showers and failing to protect against the risk of slipping and falling in the showers.

30. Defendant failed to maintain appropriate policies for providing equal access to shower facilities to prisoners with Plaintiff's disability and other similar disabilities by failing to provide ADA-compliant showers and failing to protect against the risk of slipping and falling in the showers. As a result, Plaintiff was denied equal access to the Jail's services.

31. Plaintiff could have meaningfully accessed the benefits of the Jail's services if Plaintiff's requested accommodations to the Shower had been provided or if Defendant had complied with the applicable UFAS or ADA Standards applicable to the Jail.

32. Plaintiff's requested accommodations were reasonable.

33. Plaintiff was denied her requested accommodations by reason of her disability, degenerative joint disease and arthritis.

34. Plaintiff's requested accommodations were denied deliberately or with deliberate indifference.

35. Defendant was deliberately indifferent to a substantial risk that Plaintiff would sustain injury due to the inadequate and dangerous conditions of the non-ADA compliant Shower.

36. Defendant failed to disclose or disseminate the identity of Defendant's ADA coordinator to inmates.

37. Defendant failed to conduct a needs assessment when Defendant learned about Plaintiff's disability.

38. Defendant failed to conduct ongoing needs assessment to ensure that Plaintiff's disability related needs were being met.

39. Defendant failed to have effective ADA grievance procedures.

40. Defendant was aware of the dangerous condition of the Shower.

41. Defendant was aware that the Shower did not comply with the accessibility standards required by the ADA.

42. As a result of Defendant's conduct and Plaintiff's disability, as described above, Plaintiff was denied the benefit of and equal access to the Jail's services, causing Plaintiff to suffer multiple fractures to her left lower extremity, severe pain, permanent damage to her left lower extremity, exacerbation of her pre-existing disabilities, and emotional distress, to the damage of Plaintiff in an amount to be determined at trial.

43. Pursuant to 42 U.S.C. § 12205, the Court may award Plaintiff her attorneys' fees incurred in bringing this claim.

WHEREFORE, Plaintiff, Aimie Mokwa-Goodrich, prays for judgment in her favor and against Defendant St. Louis County in a fair and reasonable sum to be determined at trial, for her attorneys' fees, for her costs, and for such other and further relief as the Court shall deem just and proper.

## COUNT II – VIOLATION OF THE REHABILITATION ACT OF 1973

COMES NOW, Plaintiff, Aimie Mokwa-Goodrich, and for Count II of her Complaint against Defendant St. Louis County for violation of §504 of the Rehabilitation Act of 1973 ("RA"), 29 U.S.C. § 794(a), states as follows:

44. Plaintiff restates and realleges the allegations set forth in Paragraphs 1 – 43 as if fully set forth herein.

45. At all times relevant herein, Defendant was the recipient of federal financial assistance for operation of the St. Louis County Department of Justice Services, the Jail, the St. Louis County Department of Public Health, and the St. Louis County Corrections Medicine Program.

46. As a result of Defendant's conduct and Plaintiff's disability, as described above, Plaintiff was denied the benefit of and equal access to the Jail's services, causing Plaintiff to suffer multiple fractures to her left lower extremity, severe pain, permanent damage to her left lower extremity, exacerbation of her pre-existing disabilities, and emotional distress, to the damage of Plaintiff in an amount to be determined at trial.

47. Pursuant to Section 504 of the Rehabilitation Act, this Court may award Plaintiff her attorneys' fees incurred in bringing this claim.

WHEREFORE, Plaintiff, Aimie Mokwa-Goodrich, prays for judgment in her favor and against Defendant St. Louis County in a fair and reasonable sum to be determined at trial, for her attorneys' fees, for her costs, and for such other and further relief as the Court shall deem just and proper.

## COUNT III – DEPRIVATION OF RIGHTS SECURED BY THE EIGHT AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION ARISING UNDER 42 U.S.C. §1983

COMES NOW, Plaintiff, Aimie Mokwa-Goodrich, and for Count III of her Complaint against Defendant St. Louis County for Deprivation of Rights Secured by the Eighth and Fourteenth Amendments to the United States Constitution Arising Under 42 U.S.C. §1983, states as follows:

48.     Plaintiff restates the allegations set forth in Paragraphs 1 – 47 as if fully set forth herein.

49.     Defendant's policies regarding emergency care and specialty care do not adequately address treatment and care for injuries such as the injuries sustained by Plaintiff as a result of the Accident.

50.     Defendant's Emergency Response Policy, St. Louis County Public Health Policy CM-7.1, and Emergency Services Policy, St. Louis County Public Health Policy CM-41, do not provide any guidance as to how to assess when an emergency situation exists, when a paramedic may be required, or whether the inmate requires transportation outside the Jail.  The procedures do not provide any guidance as to actions to take in the event that necessary diagnostic tools are unavailable to assess whether an emergency situation exists.  These policies prevented Plaintiff from receiving appropriate treatment for multiple fractures for a period in excess of 24 hours.

51.     Defendant's Medication Administration Policies, St. Louis County Public Health Policy CM-24 and CM-28.2, do not provide any guidance as to how to administer medication in urgent situations and does not provide for administration of medication when all RNs and LPNs have departed the Medication Room.  These policies prevented Plaintiff from receiving necessary medication during the 24 hour period she was kept in the Jail with multiple fractures.

9

52. Defendant's Referrals for Specialty Care Policy, St. Louis County Department of Public Health Policy CM-31.1, prohibits follow up referral care after an inmate has returned from outside medical consultation until Defendant's designated medical provider reviews the referral and is considered at the bi-weekly Medical Case Review Meeting.  This policy prevented Plaintiff from following-up for further care with Dr. Zehnder within one day, as directed by St. Mary's Hospital, and prevented Plaintiff from obtaining appropriate follow-up care as directed by St. Mary's hospital after she experienced issues with her cast.

53. Defendant has no policies in place for treating inmates with orthopedic conditions.  As a result, no appropriate supplies were available to treat the issues that arose with Plaintiff's cast.

54. At all times relevant herein, it was Defendant's policy, practice and custom to inadequately instruct, train and supervise its correctional officers, medical staff, and other Jail employees with respect to providing adequate medical care to prisoners and preventing risk of injury from inadequate and dangerous shower facility conditions. Defendant's nurse orientation packet states that "[t]he care we provide has nothing to do with the worth of our patients to receive the care that we are delivering" that "[c]areer criminals have perfected lying and other manipulative behaviors," and that "[a] nurse that appears insecure, indecisive, nervous, weak or with low self esteem can fall prey to a manipulative inmate."  These policies state that inmates are not worthy of receiving care and encourage nurses to disbelieve inmate medical complaints. Defendant was deliberately indifferent to the fact that violations of the Eighth and Fourteenth Amendments were a highly predictable consequence of such inadequate instruction, training and supervision.

55. Plaintiff was subjected to injury by Defendant's failure to provide prisoner access to adequate medical care at the Jail, failure to implement adequate mechanisms to ensure a

10

sufficient medical care delivery system, enacting policies that created risk of injury to inmates in need of emergency and specialty medical services, failure to provide adequate training and supervision, failure to employ sufficient devices and mechanisms to prevent slips and falls in the Jail shower facilities, and failure to provide lawfully required handicap accessible shower facilities.

56. These conditions and policies violated Plaintiff's right to basic human dignity and to be free from cruel and unusual punishment under the Eighth and Fourteenth Amendments to the United States Constitution.

57. These conditions and policies were implemented by Defendant and its agents, officials, employees, and persons acting in concert under color of state law, in their official capacity, and are the proximate cause of the deprivation of Plaintiff's rights secured under the Eighth and Fourteenth Amendments.

58. Defendant was aware of the conditions and policies that led to deprivation of Plaintiff's rights under the Eight and Fourteenth Amendments, but was deliberately indifferent to such conditions and policies.

59. As a result of Defendant's deprivation of Plaintiff's constitutional rights, Plaintiff fell in a dangerously inadequate handicapped shower and suffered multiple fractures to her left lower extremity, which were left untreated for over 24 hours and were inadequately treated during her recovery, resulting in severe pain, permanent damage to her left lower extremity, exacerbation of her pre-existing disabilities, and emotional distress, to the damage of Plaintiff in an amount to be determined at trial.

60. Pursuant to 42 U.S.C. § 1988, this Court may award Plaintiff her attorneys' fees incurred in bringing this claim.

WHEREFORE, Plaintiff, Aimie Mokwa-Goodrich, prays for judgment in her favor and against Defendant St. Louis County in a fair and reasonable sum to be determined at trial, for her attorneys' fees, for her costs, and for such other and further relief as the Court shall deem just and proper.

### COUNT IV – NEGLIGENCE

COMES NOW, Plaintiff, Aimie Mokwa-Goodrich, and for Count IV of her Complaint against Defendant St. Louis County for negligence, states as follows:

61. Plaintiff restates the allegations set forth in Paragraphs 1 – 60 as if fully set forth herein.

62. Defendant had a duty to keep the Jail and Shower in a safe condition while Plaintiff was in the custody of Defendant at the Jail and Defendant assigned Plaintiff to the Shower.

63. Defendant breached said duties by its failure to render the Shower ADA-compliant and failure to correct the slippery floor of the Shower, which created a dangerous condition on Defendant's property.

64. The Shower was in said dangerous condition at the time of Plaintiff's injuries described above.

65. The dangerous condition created a reasonably foreseeable risk of harm of injury by slipping and falling in the Shower.

66. Plaintiff's injuries directly resulted from the dangerous condition of the Shower.

67. Plaintiff warned Defendant of the dangerous condition of the Shower in sufficient time prior to her injuries so as to allow Defendant to have taken measures to protect against the dangerous condition. Furthermore, Defendant was aware of the dangerous condition of the Shower prior to taking custody of Plaintiff.

68. As a result of the dangerous condition, Plaintiff suffered multiple fractures to her left lower extremity, severe pain, permanent damage to her left lower extremity, exacerbation of her pre-existing disabilities, and emotional distress, to the damage of Plaintiff in an amount to be determined at trial.

WHEREFORE, Plaintiff, Aimie Mokwa-Goodrich, prays for judgment in her favor and against Defendant St. Louis County in a fair and reasonable sum to be determined at trial, for her costs, and for such other and further relief as the Court shall deem just and proper.

**PLAINTIFF DEMANDS TRIAL BY JURY.**

Respectfully submitted,

RESTOVICH&ASSOCIATES, LLC


By: /s/George B. Restovich
George B. Restovich, #49639MO
Cynthia L. Parnell, #61280MO
214 N. Clay Avenue, Suite 100
Kirkwood, MO 63122
314.434-7700 – telephone
314.480-3355 – facsimile
george@restovichlawstl.com
cindy@restovichlawstl.com
**Attorneys for Plaintiff**